## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**WP COMPANY LLC**
**d/b/a THE WASHINGTON POST**,

    1301 K Street NW
    Washington, DC 20071

               Plaintiff,

v.

**DEPARTMENT OF THE TREASURY**,

    1500 Pennsylvania Avenue NW
    Washington, DC 20240

**U.S. MARSHALS SERVICE**,

    1215 S. Clark Street
    Arlington, VA 22202

               Defendants.

Case No.   24-cv-00804

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff WP Company LLC d/b/a *The Washington Post* ("the *Post*") brings this suit against Defendants the Department of the Treasury ("Treasury") and the U.S. Marshals Service ("USMS") and states as follows:

## INTRODUCTION

1.     This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for declaratory, injunctive, and other appropriate relief.

2.     Through FOIA, the *Post* seeks records related to the costs of managing certain valuable assets – including yachts worth hundreds of millions of dollars – that the government has seized from sanctioned foreign individuals and organizations since 2017.

3.     The public bears these costs. As National Security Advisor Jake Sullivan has candidly remarked: "You know what the craziest thing is? When we seize one, we have to pay

for upkeep.  Some people are basically being paid to maintain Russian superyachts on behalf of the United States government."  *See* Stephanie Baker, *Seizing a Russian Superyacht Is Much More Complicated Than You Think*, Bloomberg Businessweek (Nov. 6, 2022).[1]

4.      Indeed, the government recently disclosed in court filings that maintaining just one such seized yacht is "costing U.S. taxpayers $600,000 per month in regular running costs, another $144,000 per month in pro-rated insurance costs, and other periodic costs."  *See* Reply Mem. in Supp. of Mot. for Interlocutory Sale at 2, *United States v. The M/Y Amadea*, No. 23-cv-9304 (S.D.N.Y. Mar. 1, 2024) (ECF No. 58) (emphasis added).

5.      Ten years after President Obama authorized sanctions against Russian officials and elites "responsible for or complicit in certain activities with respect to Ukraine," *see* Compl. ¶ 18, *id.* (ECF 1), and two years after President Biden declared that the United States "is assembling a dedicated task force to go after the crimes of the Russian oligarchs . . . to find and seize their yachts, their luxury apartments, their private jets" and other "ill-begotten gains," *see State of the Union Address*, The White House (Mar. 1, 2022),[2] there exists no complete public accounting of how much taxpayer money has been spent to maintain these seized foreign assets.

6.      Releasing the records that the *Post* has requested will therefore inform the public about "what their government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989), with respect to the management of seized foreign assets generally, and in particular will advance "the significant public interest in full transparency surrounding the massive disbursement of taxpayer funds" that the management of seized foreign assets can entail.  *See, e.g.*, *WP Co. LLC v. SBA*, 502 F. Supp. 3d 1, 10 (D.D.C. 2020).

---

[1] Available at https://www.bloomberg.com/news/features/2022-11-07/russian-oligarch-s-seized-yachts-are-costing-tax-payers-millions.

[2] Available at https://www.whitehouse.gov/state-of-the-union-2022/.

## PARTIES

7.      Plaintiff, the *Post*, is a news organization based in Washington, D.C.  It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which is among the most widely viewed news sites in the U.S., reaching tens of millions of unique visitors per month, according to independent auditor comScore.  The *Post* also offers an array of mobile, tablet, and digital publishing products, and licenses its proprietary digital experience platform, Arc XP, to a broad range of third-party websites.  But outstanding journalism remains the core of the *Post*'s work – and has been recognized with more than 70 Pulitzer Prizes since 1917.

8.      Defendant Treasury is an agency within the meaning of 5 U.S.C. § 552(f)(1).  Treasury has possession and control of records requested by the *Post*.

9.      Defendant USMS is an agency within the meaning of 5 U.S.C. § 552(f)(1).  USMS has possession and control of records requested by the *Post*.

## JURISDICTION AND VENUE

10.      This action arises under FOIA.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.      Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

**The Government's Seizure Of Foreign Assets**

12.       In March 2014, in response to Russian activity in Crimea, President Obama issued a series of executive orders that imposed "asset freezes and travel bans" on Russian officials and elites.  *See, e.g.*, Karen DeYoung & Griff Witte, *Russia recognizes Crimea's*

*independence, defying new U.S. and E.U. sanctions*, The Washington Post (Mar. 17, 2014).[3]

These sanctions "potentially include[d] anyone who is 'a senior official' in the Russian

government, who is involved in 'the arms and related material sector in the Russian Federation,'

or who has operated 'for or on behalf of, directly or indirectly,' any of the above." *Id.*

13.     In February 2022, after Russia invaded Ukraine, the Biden Administration

imposed additional sanctions on Russian individuals and institutions, which included further

efforts to "target influential Russians in Putin's inner circle and in elite positions of power within

the Russian state." *See U.S. Treasury Announces Unprecedented & Expansive Sanctions Against*

*Russia, Imposing Swift and Severe Economic Costs*, Dep't of Treasury (Feb. 24, 2022).[4]

14.     In March 2023, the United States and its multinational partners in the "Russian

Elites, Proxies, and Oligarchs (REPO) Task Force" announced that they had "successfully

blocked or frozen more than $58 billion worth of sanctioned Russians' assets," including "luxury

real estate and other luxury assets owned, held, or controlled by sanctioned Russians, valued in

the many billions of dollars," as well as "yachts and other vessels owned, held, or controlled by

sanctioned Russians," along with "aircraft, and other property located around the globe." *See*

*Joint Statement from the Repo Task Force*, Dep't of Treasury (Mar. 9, 2023).[5]

15.     Last month, President Biden "announc[ed] more than 500 new sanctions against

Russia for its ongoing war of conquest on Ukraine and for the death of Aleksey Navalny," which

"will target individuals connected to Navalny's imprisonment as well as Russia's financial

sector, defense industrial base, procurement networks and sanctions evaders across multiple

---

[3] Available at https://www.washingtonpost.com/world/national-security/us-eu-announce-sanctions-folllowing-vote-in-ukraine/2014/03/17/3223799c-add9-11e3-a49e-76adc9210f19_story.html.

[4] Available at https://home.treasury.gov/news/press-releases/jy0608.

[5] Available at https://home.treasury.gov/news/press-releases/jy1329.

continents." *See Statement from President Joe Biden Ahead of the Two-Year Anniversary of Russia's Brutal Assault Against Ukraine*, The White House (Feb. 23, 2024).[6]

16.     One of the highest profile examples of such a seized asset is the *Amadea*, "a 348-foot luxury superyacht" that the government alleges "is beneficially owned" by Suleiman Kerimov, whom Treasury has designated as a "Russian Oligarch." Compl. ¶¶ 5, 25-26, *United States v. The M/Y Amadea*.

17.     In June 2022, the government sailed the *Amadea* from Fiji, where it had been seized, to the United States, and the government "has since borne the costs to maintain" the vessel. *See* Mem. of Law in Supp. of Mot. for Interlocutory Sale at 2, *id.* (ECF 33).

18.     Those costs are so great – "roughly $600,000 per month" – that the government requested permission from the U.S. District Court for the Southern District of New York to sell the *Amadea* before litigation over its ownership is complete. *Id.* at 1.

19.     In the government's own words, such an interlocutory sale is justified because these management and maintenance expenses "pose a drain on the public fisc." *Id.*

**The *Post*'s FOIA Request To Treasury**

20.     Through its Office of Foreign Assets Control ("OFAC"), Defendant Treasury "administers and enforces economic sanctions programs primarily against countries and groups of individuals." *See About OFAC*, Dep't of Treasury.[7]

21.     On January 17, 2024, the *Post* submitted a FOIA request to Treasury, a true and correct copy of which is attached as Exhibit A, seeking five categories of OFAC-related records:

---

[6] Available at https://www.whitehouse.gov/briefing-room/statements-releases/2024/02/23/statement-from-president-joe-biden-ahead-of-the-two-year-anniversary-of-russias-brutal-assault-against-ukraine/.

[7] Available at https://ofac.treasury.gov/about-ofac.

a. All licenses issued by the Office of Foreign Office Control (OFAC) to any entity permitting it to manage seized property—including licenses granted to the FBI, U.S. Marshals Service, the New York Department of Financial Services, and/or any U.S. Attorney's Office—between January 1, 2017 and the date this request is completed.[8]

b. Copies of the OFAC-specific license database, for both individuals and companies, for every year including and since the year 2009.[9]

c. All licenses issued by OFAC to Amentum Services Inc. and CWS Asset Management & Sales Group between January 1, 2017 and the date this request is completed.

d. All contracts awarded by the Department of Treasury to Amentum Services Inc. and CWS Asset Management & Sales Group between January 1, 2017 and the date this request is completed.

e. All Treasury records, including but not limited to licenses and contracts, related to any assets in the possession of the Treasury, including OFAC and the Executive Office of Asset Forfeiture, seized from or forfeited by any Russian target targeted since February 1, 2022. This request includes but is not limited to licenses and contracts related to:

   i. The Motor Yacht Amadea, which the Justice Department stated on October 23, 2023, had been seized by the U.S. government and put "under the control of the U.S. Government in San Diego, California;

   ii. The Motor Yacht Tango, which the Justice Department seized in Spain according to an April 4, 2022 DOJ press release;

   iii. Any property previously owned by Viktor Vekselberg, including those described in a February 24, 2023 Department of Justice press release; and

   iv. Records that mention any of following yachts: Lena; Sailing Yacht A (SY A); and Lady M, seized by Italian officials; Valerie, seized in Spain; and Amore Vero, seized by French officials.

---

[8] The *Post* attached an example of one such license that OFAC granted to the FBI, the U.S. Attorney's Office for the Southern District of New York, and the New York County District Attorney's Office. *See* Ex. A at 5-6.

[9] As the *Post* noted in its FOIA request, *see* Ex. A at 2, OFAC published this database for 2008. *See* https://home.treasury.gov/footer/freedom-of-information-act/electronic-read-room/ofac-frequently-requested.

*See* Ex. A at 1-2 (footnotes omitted).

22.     Treasury received the *Post*'s FOIA request on January 18, 2024.

23.     On February 28, 2024, Treasury acknowledged receipt of the *Post*'s FOIA request.  A true and correct copy of Treasury's acknowledgment email is attached as Exhibit B.

24.     On March 1, 2024, Treasury again acknowledged receipt of the *Post*'s FOIA request and assigned it handling number 2024-OF-00056.  A true and correct copy of Treasury's second acknowledgment letter is attached as Exhibit C.

25.     To date, Treasury has not produced any records responsive to the *Post*'s request.

26.     To date, Treasury has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

27.     To date, Treasury has not provided a timetable for the production of any records in response to the *Post*'s request.

**The *Post*'s FOIA Request To USMS**

28.     As part of the Department of Justice's Asset Forfeiture Program, Defendant USMS "manages a wide array of assets including real estate, commercial businesses, cash, financial instruments, vehicles, jewelry, art, antiques, collectibles, vessels and aircraft."  *See What We Do: Asset Forfeiture*, U.S. Marshals Serv.[10]

29.     On January 17, 2024, the *Post* submitted a FOIA request to USMS, a true and correct copy of which is attached as Exhibit D, seeking two categories of records:

> a.  All licenses issued by the Department of Treasury's Office of Foreign Office Control (OFAC) to the Department of Justice, including the U.S. Marshals Service, between January 1, 2017 and the date this request is completed.

---

[10] Available at https://www.usmarshals.gov/what-we-do/asset-forfeiture.

    b.    All records, including but not limited to contracts awarded by the U.S. Marshals Service under the Department of Justice Asset Forfeiture Program, related to any private entities managing assets seized from or forfeited by any Russian target targeted since February 1, 2022. This request includes but is not limited to contracts related to:

        i.    The Motor Yacht Amadea, which the Justice Department stated on October 23, 2023, had been seized by the U.S. government and put "under the control of the U.S. Government in San Diego, California;

        ii.    The Motor Yacht Tango, which the Justice Department seized in Spain according to an April 4, 2022 DOJ press release;

        iii.    Any property previously owned by Viktor Vekselberg, including those described in a February 24, 2023 Department of Justice press release; and

        iv.    Records that mention any of following yachts: Lena; Sailing Yacht A (SY A); and Lady M, seized by Italian officials; Valerie, seized in Spain; and Amore Vero, seized by French officials.

*See* Ex. B at 1-2 (footnotes omitted).

30.    USMS received the *Post*'s FOIA request on January 18, 2024.

31.    To date, USMS has not produced any records responsive to the *Post*'s request.

32.    To date, USMS has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

33.    To date, USMS has not provided a timetable for the production of any records in response to the *Post*'s request.

## CLAIM FOR RELIEF

### COUNT I
### Declaratory and Injunctive Relief:
### Constructive Denial in Violation of FOIA, 5 U.S.C. § 552

34.    The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

35.     FOIA provides this Court with "jurisdiction to enjoin [Defendants] from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

36.     The withheld records the *Post* seeks, which are the subject of the *Post*'s requests to Defendants, are agency records within Defendants' control.

37.     Defendants received the *Post*'s requests on January 18, 2024.

38.     Pursuant to FOIA, each Defendant was required to make and communicate to the *Post* a "determination" on its request no later than February 15, 2024.  5 U.S.C. § 552(a)(6)(A)(ii).

39.     To date, neither Defendant has made and communicated to the *Post* a "determination" on its respective request within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii). Defendants have instead failed to respond to those requests, and thus constructively denied them.

40.     There is no basis under FOIA to withhold, in whole or in part, the records that the *Post* requested.  Defendants have wrongfully withheld agency records in violation of FOIA.

41.     The *Post* requests a declaratory judgment that Defendants have violated FOIA and that the *Post* is entitled to immediately receive the requested records.

42.     The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction directing Defendants to produce the requested records in full and setting a deadline for compliance.

## REQUEST FOR RELIEF

WHEREFORE, the *Post* respectfully requests that this Court:

A.     Declare Defendants' failure to provide responsive records unlawful under FOIA;

B.      Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing Defendants to make the requested records available to the *Post*, unredacted, and without further delay, and setting a deadline for compliance;

C.      Provide for expeditious proceedings in this action;

D.      Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.      Grant such other and further relief as the Court may deem just and proper.

Dated:  March 20, 2024            Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff WP Company LLC
d/b/a The Washington Post*